UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA          :
                                  :
v.                                :
                                  :
EDWARD THOMAS                     :      No. 3:14-cr-00031(RNC)
                                  :
                                  :

<u>RULING AND ORDER</u>

Defendant Edward Thomas is charged with one count of conspiracy to commit sex trafficking of a minor and two substantive counts of sex trafficking of a minor.  The government has moved for an order allowing into evidence out-of-court statements made by one of the defendant's two alleged victims ("Minor Victim 2," or "MV2"), who is not available to testify. ECF No. 104.  For reasons that follow, the motion is granted as to most of the statements the government identifies but denied as to one of them.

The statements are in the form of text messages purportedly exchanged between Thomas and MV2 over the course of two weeks in October 2012.  MV2 sent most of the messages to Thomas's phone while she was traveling by bus from Oregon to meet Thomas in New York.  Others were sent after MV2 arrived in New York, travelled to Connecticut with Thomas, and left to return to Oregon.

Thomas replied to many of MV2's text messages, and he concedes that his half of the conversation is a series of

1

admissible party admissions.  He argues, however, that MV2's statements should not be admitted.  He offers three reasons for excluding them: first, the messages have not been authenticated as the statements of MV2, as opposed to the statements of some other person; second, the statements are inadmissible hearsay; and third, the statements are unfairly prejudicial and inadmissible under Rule 403.  Each argument will be addressed in turn.

I. <u>Authentication</u>

Under Federal Rule of Evidence 901(a), an item of evidence can be authenticated through the production of "evidence sufficient to support a finding that the item is what the proponent claims it is."  The defendant argues that the government may not offer the text messages unless it produces evidence permitting the reasonable conclusion that MV2 sent them. He urges that the government will be unable to carry this burden because MV2 will not testify in the case, preventing the government from demonstrating authenticity through a witness with personal knowledge.

It is true that the testimony of a witness with knowledge is one way to authenticate an item of evidence, and it is also true that MV2 will not testify.  But there are other ways to authenticate evidence and the government submits that it will be able to meet its burden through one of those avenues.

2

Specifically, it states that testimony from MV2's stepfather, a "selfie" photograph sent from the phone in issue, and information taken from the phone of the other victim ("Minor Victim 1," or "MV1") will permit the reasonable conclusion that MV2 sent the text messages.  The question of authenticity, then, turns on the admissibility and substance of evidence that is not yet in the record.  I will therefore reserve a ruling on this question until a fuller picture of the government's evidence develops during trial.

## II. Hearsay

Hearsay is an out-of-court statement offered in court to prove the truth of what it asserts, Fed. R. Evid. 801(c), and it is inadmissible unless an exception to the rule against hearsay applies, Fed. R. Evid. 802.  A statement offered for some purpose other than to prove the truth of the matter asserted is not hearsay.  One such purpose is showing the statement's effect on the listener.  Another is providing context that will aid the jury in understanding the meaning of a different admissible statement.  United States v. Barone, 913 F.2d 46, 49 (2d Cir. 1990).

Some out-of-court statements that fit the definition of hearsay are classified as "not hearsay" under Rule 801.  Of relevance here, an opposing party's own statement is admissible nonhearsay, even if made out of court and offered to prove the

3

truth of what it asserts.  Party admissions include statements that the "party manifested that it adopted or believed to be true."  Fed. R. Evid. 801(d)(2)(B).

The parties agree that the text messages sent by Thomas are admissible as party admissions.  They join issue on the messages sent by MV2.  Below, I reproduce the text message conversation piece by piece and discuss the admissibility of the statements.

<u>Message 1</u>

*MV2: Send a pic of ur girl*

*Edward Thomas: Send me a pic*

*ET: I'm telling u like I told her sexy! If at anytime u want to leave u can! U will b here own ur own free will! My job is to keep u safe! Not keep u as a hostage!*

*MV2: K*

*MV2: Send me another pic*

If any of MV2's statements contains an assertion — and it is arguable none of them does — it is the implied assertion in the first statement that Thomas has a "girl."  Even if MV2's statement is read to make that assertion, it is admissible as an adoptive admission.[1]

---

[1] This statement does not appear to be very important to the government, but I will discuss this theory of admissibility here because it also applies to other more important statements.

Rule 801 permits the introduction of out-of-court statements that an opposing party adopted as his own.  Determining whether a person has adopted the statement of another is a context dependent inquiry that turns on our everyday understanding of the way people communicate.  In the circumstances, do the person's words or conduct manifest agreement with the declarant's assertion?  If so, the statement is an adoptive admission.

In a passage relevant to a number of the statements made by MV2 in these messages, one treatise notes that "[i]f a party accepts or builds on the assertions of another, it is usually fair to say she adopted them."  Christopher B. Mueller & Laird C. Kirkpatrick, 4 FEDERAL EVIDENCE § 8:47 (4th ed. 2014).  United States v. Bolden, 514 F.2d 1301 (D.C. Cir. 1975) illustrates the point.  In that case, a security guard was killed in the course of a robbery.  The guard struck one of the defendants during the robbery, bloodying his lip.  After the robbery, one defendant was heard to say to the other, "Dag man, I didn't know this old man could hit so hard."  Id. at 1311.  The second defendant replied, "Yes, but I didn't plan it that way."  The first defendant's statement was admitted against the second as an adoptive admission because, in the circumstances, the natural reaction of an innocent person would have been to question the remark about the old man: "The remarks were made in casual conversation, out of the presence of police and immediately after the crime.

Neither defendant suggested to the other that he didn't know what the other was talking about, the natural reaction if they had not recently engaged in some violent episode together which is what the statements were offered to prove."  Id.

Here, Thomas's response to the implied assertion concerning his "girl" fits the same model.  If he and MV2 did not share some understanding about the fact that he had a "girl" and her identity, the natural response to MV2's request would be, "What girl?" rather than, "Send me a pic."  In ordinary conversation, people do not ignore remarks they do not understand.  They question them.  I therefore conclude that Thomas adopted MV2's statement.

Thomas argues that none of his statements are adoptive admissions because "[a]doptive admissions typically arise when a defendant who is confronted with an allegation of criminal wrongdoing, often in an interrogation setting, responds with silence."  ECF No. 107, at 5.  It might be true that adoptive admissions "typically" arise that way, but they can also arise in other ways.  As the Second Circuit has recognized: "There is no express requirement in the Federal Rules of Evidence that a party can adopt only those statements which either incriminate him or are otherwise against his interest."  Shulman, 624 F.2d at 390. Adoptive admissions are about ordinary expectations regarding the way people converse with each other, not hard-and-fast rules

relating to the incriminating nature of a third party's statement.

Whether a third party's statement is incriminating can affect the outcome of the adoptive admission analysis.  For example, the Second Circuit has noted that silence, or other ambiguous conduct, more likely indicates adoption if the third party's statement is incriminating as to the adopter: we ordinarily expect innocent people to deny allegations against them.  <u>Id</u>.  This will be important in the context of certain other statements made by MV2.

Message 2

*MV2: $20 is better, that would be for the rest of the trip so we wouldn't have to worry about anything*

*ET (30 seconds later): I'm on it*

*MV2: K:)*

Here, MV2's first statement does not really assert anything: it is a request accompanied by an explanation.  Even if this is taken to impliedly assert the existence of a trip, the statement is admissible as an adoptive admission or for one of two nonhearsay purposes.

The statement may properly be considered an adoptive admission because Thomas appears to have assented to it in his response.  "I'm on it," meaning "I will do what you're asking,"

impliedly acknowledges the existence of the trip, if that is what the statement is offered to prove.

MV2's statement also provides needed context for Thomas's. If a party's "own words assert the points to be proved, but refer to or embrace ideas or terms in statements by others, it is usually sensible to proceed on a somewhat different theory [rather than the adoptive admission theory]: What others said is admissible not because she adopted or agreed with it, but because the things that others have said are part of the necessary context for understanding her own statements." Mueller & Kirkpatrick, 4 FEDERAL EVIDENCE § 8:47 (4th ed. 2014); Barone, 913 F.2d at 49 ("[s]o long as the [third party's] recorded statements are not presented for the truth of the matter asserted, but only to establish a context for the recorded statements of the accused," they are not hearsay).  Here, MV2's statement shows that "I'm on it" is shorthand for: "I'm going to give you twenty dollars for the rest of the trip so you don't have to worry about anything."  Offered for this purpose, the evidence is unobjectionable.[2]

---

[2] The defendant suggests that the courts have "usually" admitted statements under a context theory "with the understanding that the declarant was available and could have been called as a defense witness."  ECF No. 107, at 6.  It may be an easier call for a trial court to admit statements under the context theory when the declarant is available.  But offering evidence for a nonhearsay purpose does not implicate hearsay rules concerning the declarant's availability.

Finally, if this evidence is offered to show that Thomas had knowledge that MV2 was engaged in a "trip," it is offered for its effect on the listener and is not hearsay.

Message 3

*MV2: What's taking so long*

*ET: I'm on line ma*

*MV2: Well how much.longer*

*ET: 5 min*

*MV2: Call me in 5mins with the info were ready to write it on the paper*

*ET: Ok*

*ET: 9268372650*

MV2 does not assert anything of importance in this portion of the conversation, in which she chiefly asks Thomas questions. United States v. Oguns, 921 F.2d 442, 449 (2d Cir. 1990) (questions are not assertions and are therefore not hearsay). Her assertion that she was "ready to write it on the paper" appears to be of no substantive importance in the case and therefore will not be offered for its truth.

Message 4

*ET: So tell me about u sexy!*

*MV2: Hmmm.. I love to shop! Cook w/e*

*MV2: You'll get to know me overtime, but what about you*

*ET: I'm more low key!! I love to shop but rite now I'm focused on a lot more!! So cloths don't mean much to me!! I want to house on the hill and that S550 benz*

*MV2: Ok that's cool, I want a white bmw*

*ET: 2 door R 4 door*

*MV2: 4door*

*ET: Yeh I like the 650 drop but that S550 is the truth*

*ET: All I ask is for ur loyalty! When u get here u will b around me a lot!!*

*MV2: Ok*

*ET: Wats ur sign*

*MV2: Pisces*

*ET: ;)*

Here, too, none of MV2's statements appears to be offered to prove its truth.  Whether MV2 wants a BMW or is a Pisces has no bearing on the charges against Thomas.  The statements therefore appear to be offered for a nonhearsay purpose, such as showing

the simple fact that the conversation occurred, and are thus admissible.

Message 5

*MV2: We just arrived to Denver*

Thomas did not respond to this statement.  The next message (reproduced below) came from MV2 and was sent more than an hour after the message about Denver.

For two reasons, I cannot conclude that Thomas adopted this statement through his silence.  First, in the medium of text messaging — unlike the medium of face-to-face or telephone conversation — there is no guarantee that the silent "listener" was even aware of the statement.  He might simply have neglected to tend to his phone for a time.  Second, as discussed above, even if Thomas *did* see the message, silence tends to be more probative if it occurs in the face of a statement tending to incriminate the silent party.  Shulman, 624 F.2d at 390.  The remark about Denver, even if incriminating now, would not have seemed incriminating when it was made.  I think it is well within the bounds of normal conversational behavior not to respond to such a remark when sent by text message, even if one disputes its premise.

Neither is this message admissible for the nonhearsay purpose of showing context.  In the absence of a response from

Thomas, the statement provides no context for understanding one of his own statements.

Nor is the statement admissible to prove that Thomas knew MV2 to be in Denver.  We do not know if he saw the message, so it cannot be taken to bear on his knowledge.

This statement can, however, be offered to prove that it was made.  If the government wishes to introduce the message to demonstrate that MV2 was communicating with Thomas about her location in October 2012 — which the statement shows whether MV2 was actually in Denver or not — the rule against hearsay is not a bar.

<u>Message 6</u>

*MV2: Whatsup love!*

*ET: Wats get sexy yall ok*

*MV2: Yeah, I haven't had service*

*ET: Oh ok!!*

*MV2: Send a pic*

*ET: Ok*

*MV2: U look like a firce lion, send a fullbody1*

*ET: I'm glad u took the chance to join me and my family*

*MV2: Yeah?*

*ET: Wat state yall in*

*MV2: Idk! Were about to b in Omaha*

*ET: Ok*

*MV2: So ru gonna send a full body pic?*

*ET: This the only body pic I got*

*MV2: Was the sun brite in your eyes?*

*ET: Lol hell yeh! Wat the u think*

*MV2: Lol*

*MV2: Idk about [MV1], but.I want to get a place asap! Can you make that happen?*

*ET: As long as I got ur loyalty ma I will make that happen in weeks!*

*MV2: It should only take1:)*

*ET: Like I said ma I can make it happen but. Don't want to put time in to someone I can't trust!!*

*ET: If I make all this happen u can't just pick up and leave*

*ET: I just spoke to a lady last night about a 5 bed room house!!*

*MV2: I know! I've been threw this beforw*

*MV2: Ok:) well would you rather get me an her a nice condo or.all 4us a big house*

*ET: I just spoke to a lady last night about a 5 bed room house!!*

*MV2: ?*

*MV2: Is their laundry @the hotel?*

*ET: Not far!!*

*MV2: Ok*

Different statements from this portion of the conversation raise different issues.

MV2's statements about sending pictures either assert nothing ("Send a pic") or are not offered to prove the truth of what they assert ("U look like a firce lion").  Accordingly, the government may offer them.

The government may likewise offer MV2's statement, "Were about to b in Omaha."  Thomas adopted this statement as his own by replying, "Ok."  (Or, relatedly, the statement shows that "Ok" really means, "I understand you to be in Omaha.")  It is therefore admissible to prove that MV2 was in Omaha.[3]  It might also be offered for some nonhearsay purpose, such as proving

---

[3] Of course, Thomas likely did not know whether this was true or not.  But party admissions need not be based on personal knowledge.

14

Thomas's knowledge of MV2's movements or the fact of the communication.

As for MV2's statements about her desire to get a house, they are admissible because the government does not plan to offer them for their truth.  Whether MV2 actually wanted a house is irrelevant.  What matters is that she and Thomas were discussing living arrangements.

Message 7

*MV2: Wyd:)*

*ET: Oh my way to new york so I can pic yall up n the AM*

*MV2: Ok love!*

*ET: So u sure u ready for this change lil mama*

*MV2: Will talk in person*

*ET: oh wow!! That sounds like a no*

*MV2: Its just a long conversation, but theanswer is yes:)*

*MV2: Send another pic please*

*MV2: Send another1*

*MV2: What are you gonna wear when u get us*

*ET: Don't know yet!! Y u ask*

*MV2: Jw*

*MV2: We r on the last bus,*

*ET: That's wats up!! See yall soon*

*MV2: K*

*MV2: Do you have some weed?*

*ET: Ill get some*

*MV2: Ok*

*MV2: U up?*

*ET: Hell yeh I'm up!! I got to b there to get yall*

*MV2: Were leaving the stop in 10mins were in philideliphia, I'm excited no more stops but its way more scary than portland and we already see cop amd ambulenc*

*MV2: e lights lol*

With the exception of MV2's last statement, nothing in this part of the conversation is relevant for the truth of what it asserts.  MV2's last statement is similar to her statement about being in Omaha.  Thomas did not reply to the message, so he did not adopt the statement and it is not needed to show context. Nor is it probative of Thomas's knowledge, as we do not know whether he saw it.  But it can be offered to show that MV2 was keeping Thomas apprised of her movements.

Message 8

*ET: No I'm not mad at u sexy!! U yake care and it my phone when u do get home!! I wish u the best*

*ET: Just keep in touch with ur friend!! U might think she don't like u but I got texts in my phone to prove it!!!! so take care*

*MV2: I gave u the $cause u paid for my ticket and I don't think shell talk to me*

*ET (five minutes later): She got love for u and she told me this B4 yall got here!!*

*ET: Yeh she said u get on here nerve somethings but when u lay in her arms and she plays in ur hair it make it all better!!!*

*ET: Call me if u need me! I'm not mad at u and neither is she!! I understand*

*MV2: I need to gwt home*

*ET: Well if u would have stayed and told me that!! I would have sent u home!! U see how cool I am!! I know she got in ur head!!*

*MV2: I didn't wamt to, I don't like ur program*

*ET (one minute later): If u would have gave it 2 days u would have been here with just me!*

There are two important statements in this set: "I gave u the $cause u paid for my ticket and I don't think shell talk to me," and "I didn't wamt to, I don't like ur program."

Starting with the second, it is admissible as an adoptive admission or to show context.  Thomas's reply is responsive to the implied assertion that he had a "program" (basically, his reply indicates that the "program" MV2 experienced was only temporary).  If Thomas had no inkling of what MV2 was talking about, he would not have quickly delivered a response that incorporated the premise of her remark.

I am not convinced, though, that MV2's statement about Thomas having given her money is admissible to prove that he did so.  Her statement has two parts, one relating to money and one to her relationship with MV1.  Thomas's response addressed the MV1 portion and ignored the money portion.  On this point, Mueller & Kirkpatrick states:

> Often the same conclusion [that adoption occurred] is indicated by the fact that a party replies by way of rebuttal or disagreement to some points raised by another, but comments in some other way or ignores altogether related points that she hears the other make.  However, in the latter situation, obviously the response is more ambiguous and ignoring or replying in different ways to points made by others may be more readily explainable in other ways: The person in question may be familiar with the points to which she replied, and may lack knowledge about the points she

18

did not address, or she might simply have gotten tired
of the conversation and decided to stop carrying the
burden of replying.  Furthermore, she may have
overlooked something with which she actually disagrees,
or may have preferred to change the direction of the
conversation or turn the occasion toward a more relaxed
or respectful mood.  In such cases obviously the
response does not indicate adoption.

Mueller & Kirkpatrick, 4 FEDERAL EVIDENCE § 8:47 (4th ed. 2014).

Here, I do not think that Thomas's response can fairly be taken
to indicate his assent to the assertion that he paid for MV2's
trip.  Failure to respond to one part of a two-part remark even
in normal conversation can be ambiguous.  Id.  The listener might
be preoccupied and overlook the part to which he does not
respond, or he might want to address the other part before
turning to the rest of the statement.  This possibility is even
greater in the medium of text messaging, in which one party to
the conversation might do no more than glance at a message.[4]
Moreover, MV2 never replied to Thomas's response concerning MV1.
If Thomas wanted to discuss MV1 first and then ask what MV2 meant
about the money, he never had the chance because the discussion
about MV1 never occurred.  In the circumstances, Thomas's failure
to object to the portion of the statement dealing with money is
too susceptible of multiple interpretations to reasonably
indicate that he adopted it as his own.  And given

---

[4] In this instance, Thomas did not respond to the text until five
minutes after he received it.  This is a longer lag period than
occurred during most of his conversation with MV2 and might
indicate that he was preoccupied.

that Thomas did not respond to the remark at all, it is not needed to provide context for one of his statements.  It is therefore inadmissible hearsay.[5]

Message 9

*ET: U ok*

*ET: U ok lil mama*

*MV2: I'm flying home*

*ET: Ok lil mama take care of yourself and I wish u the best!!*

*ET: Hey big head! U ok lil mama*

*MV2: Ya just got here please don't text me anymore*

*ET: I already know wat it is!! Lmao*

*ET: And ur friend ask for u!! She just wanted to know if u was ok*

---

[5] This statement does have some probative value if offered simply to show that it was made.  In this case, it matters that Thomas and MV2 discussed MV2's trip east, even if the assertions made in the discussion were untrue.  But if offered for that purpose, the probative value of the statement is slight because many admissible statements demonstrate the same thing.  Moreover, whether Thomas paid for MV2's ticket is in dispute, and even with a limiting instruction a jury might use this statement as proof of the point.  This risk renders the statement inadmissible under Rule 403.

*ET: I know u ask me not to hit u up but I just got 1 question for u*

*ET: Hey beautiful!!!!! I hope all is well*

*MV2: Yes! Whatsup love:)*

*ET: I'm glad ur ok!!!! I really do wish u would have stayed*

*MV2: Send me a pic*

*ET: Send me one*

*ET: U got a pic of me*

*ET: Wats gud*

*ET: R u happy*

*MV2: Stop hitting this phone bruh. Church*

In this last set of messages, the only statement that might be offered for its truth is, "I'm flying home."  If that statement is so offered, it can be admitted as an adoptive admission or for context for reasons similar to those discussed in connection with other comparable statements.

III. Rule 403

Under Rule 403, relevant evidence is excluded if its probative value is substantially outweighed by the danger of unfair prejudice.  Fed. R. Evid. 403.  Here, Thomas contends that

MV2's out-of-court statements should not be admitted because the jury is likely to use them for the truth of what they assert, and he will be unable to cross-examine her.

I disagree.  First, many of the statements either assert nothing (say, a request for a photo) or assert nothing of importance in the case (for instance, MV2's desire for a white BMW).  These statements present no danger of unfair prejudice because even if the jury puts them to impermissible use, it does no harm to Thomas.  Second, many of the statements are admissible because Thomas made them his own.  Hearsay is disfavored because the party against whom the statement is offered cannot cross-examine the declarant.  A party cannot reasonably argue that he is prejudiced by his inability to cross-examine himself.

Finally, as to some statements not adopted by Thomas, there is admittedly a danger of impermissible use by the jury.  For instance, if the statement "We're in Denver" is offered to show that MV2 was communicating with Thomas about her location, the jury might consider it as proof that MV2 was actually in Denver.  But the risk of unfair prejudice is not significant.  That MV2 actually travelled from Oregon to Connecticut is amply demonstrated by other evidence.  Indeed, some of Thomas's adoptive admissions, such as the remark about Omaha, can be admitted as substantive evidence of MV2's travel.  Balanced against the tendency of the evidence to prove that MV2 was in

22

close communication with Thomas about her location during October 2012, this low risk of unfair prejudice is not enough to keep the evidence out under Rule 403.

IV.  Conclusion

Accordingly, the government's motion is hereby granted in part and denied in part.  The statement "I gave u the $cause u paid for my ticket" is inadmissible hearsay and must be excluded under Rule 802.  The rest of the statements are admissible, though some may not be offered for the truth of what they assert.

So ordered.

_____/s/_____
                Robert N. Chatigny
            United States District Judge

23